## Commonwealth v. Klein.

*Involuntary manslaughter—Pedestrian on sidewalk killed by automobile.*

1. Involuntary manslaughter is where it clearly appears that neither death nor great bodily harm was intended, but where death was caused accidentally by an unlawful act not amounting to felony or by an act not strictly unlawful in itself, but done in an unlawful manner and without due caution.

2. Negligence is the absence or want or lack of that degree of care that an ordinarily prudent person would exercise under the circumstances of the particular case.

3. No particular degree of negligence is necessary to make out the crime of involuntary manslaughter where death ensues as the result thereof.

4. Instructions as to costs.

Charge of the court on indictment for involuntary manslaughter. Q. S. Fayette Co., Sept. T., 1923, No. 236.

*N. W. Rosenberg,* Assistant District Attorney, and *George Patterson,* for Commonwealth.

*H. S. Dumbauld* and *Elias Goodstein,* for defendant.

VAN SWEARINGEN, P. J., Sept. 14, 1923.—Members of the jury: The defendant, Herbert Klein, is being tried on an indictment charging involuntary manslaughter, for the killing of William Hunt late on the night of June 25, 1923, by running into and striking him with an automobile. Involuntary manslaughter is where it clearly appears that neither death nor great bodily harm was intended, but where death was caused accidentally by an unlawful act not amounting to felony, or by an act not strictly unlawful in itself, but done in an unlawful manner and without due caution.

The facts are that the defendant was driving his automobile late at night on North Gallatin Avenue, in the City of Uniontown, coming south on that avenue, which crosses Peter Street at right angles, and that in attempting to pass a street car at about that point, the machine was driven on to the curb and on to the sidewalk and there caught the deceased, who was standing with others on the sidewalk on the south side of Peter Street, near the corner, and crushed him up against the wall of the Union Trust Company building, inflicting injuries upon him from which he died. The street car track on North Gallatin Avenue runs from Main Street north to Peter Street, where it has one track running out Peter Street westwardly at right angles, the main track proceeding one square further out North Gallatin Avenue and then turning at right angles westwardly out Penn Street, but the last-mentioned street is in no way connected with this case.

The testimony on the part of the Commonwealth is to the effect that as the defendant was driving his machine south on North Gallatin Avenue, at the point where it intersects Peter Street, a street car was approaching him, going in the opposite direction, and that the automobile and the street car met at just about the intersection of the two thoroughfares. The street car stopped near that point, and the automobile swerved, whether in an attempt to pass the street car or in an attempt to go out Peter Street, or for some other reason, it swerved just a little, and neither did it get out Peter Street nor up North Gallatin Avenue, but went over the curb and sidewalk on Peter Street and struck the deceased.

The allegation on the part of the Commonwealth is that the automobile was being driven at such a high rate of speed that when it came close to the street car it was unable to pass, and did not pass, and on account of its speed ran on to the curb and sidewalk on Peter Street and pinned the deceased against the wall of the building.

There is considerable evidence in the case as to the rate of speed at which the automobile was being driven at that time. One witness said he was driving an automobile along the street, just north of where this accident took place, and that he was driving his machine probably fifteen or eighteen miles an hour, and that the defendant passed him on the street a very little bit before the accident occurred, indicating that the defendant was traveling at a rate of speed at least more than fifteen or eighteen miles an hour. Another witness who saw the defendant's automobile being driven along the street near where this accident happened has testified that, in his judgment, the defendant was driving at a rate of speed not less than thirty miles an hour. Still another witness who saw the defendant driving there has testified that, in his judgment, the car was going thirty miles an hour or over. And another witness who saw defendant's car there has said that, in his judgment, it was running at a rate of speed of about forty miles an hour.

On the part of the defendant there is evidence to the effect that the defendant's automobile was not traveling at a rate of speed greater than eighteen miles an hour at any time in any way connected with this case. The defendant has testified that as he came up to the point of the accident, approaching the street car which was coming toward him, and just as the street car turned—there is some evidence in the case that it turned about a foot in beginning to make the curve on to Peter Street—to make the curve, possibly only the distance of a foot or something like that, the headlight of the street car was turned a little to one side and the light fell directly into the eyes of the defendant and that he was partly blinded, and that his machine, before he could get it stopped, had run on to the curb and on to the sidewalk, injuring the deceased, and the defendant contends that the trouble amounted simply to an accident that could in no way have been prevented under the circumstances, that he was not to blame for it in any way, and that it was just one of those things that sometimes occur for which no one can be held responsible.

When we talk here about an act being done in an unlawful manner—and it is alleged that this automobile was being driven in an unlawful manner at that time—we mean that it was done negligently, carelessly and recklessly. The question as to what constitutes negligence in this case is a question for your consideration. Negligence is the absence or want or lack of that degree of care that an ordinarily prudent person would exercise under the circumstances of the particular case. The question with you will be whether or not this defendant, taking into consideration all the facts and circumstances of the case, was operating his automobile there with such a degree of care as an ordinarily prudent person would exercise in operating an automobile under such circumstances.

No particular degree of negligence is necessary to make out the crime of involuntary manslaughter, where death ensues as the result thereof. And if you are satisfied in this case beyond a reasonable doubt that the deceased came to his death as the result of the negligent operation by the defendant of his automobile, then you will be warranted in finding the defendant guilty of involuntary manslaughter. If you are not satisfied beyond a reasonable doubt that he was acting there in a negligent manner, that he was operating his machine negligently at that time; if you are not satisfied of that beyond a reasonable doubt, then you should return a verdict that the defendant is not guilty. The reason for that is this: The law in any criminal case is that the defendant is presumed to be innocent until his guilt shall have been proved to the satisfaction of the jury beyond a reasonable doubt. And if a reasonable doubt exists in the minds of the jury at the close of the case as to whether or

not a defendant be guilty, then the law is that the defendant shall be given the benefit of that doubt and be acquitted. A reasonable doubt is a doubt which arises fairly out of the evidence in the case. It must be an honest doubt, such a difficulty as fairly strikes a conscientious mind and clouds the judgment. A reasonable doubt is such a doubt as you may have in your minds, after going over all of the evidence, that prevents you from coming to a conclusion satisfactory to yourselves as to the defendant's guilt.

In this case, after you have gone over all the evidence that has been presented, and considered it the very best you know how, if you have a reasonable doubt existing in your minds as to whether or not this defendant on that occasion was operating his machine negligently; if you have a reasonable doubt as to whether or not the death of this deceased man was brought about by the negligent operation by the defendant of his automobile; if you have a reasonable doubt about that, then the law is that you shall give him the benefit of that doubt and acquit him. But, on the other hand, if, after you have gone over all of this evidence and given it the best consideration of which you are capable, you are satisfied beyond such reasonable doubt that the death of the deceased was brought about by the negligent operation by this defendant of his automobile, then your duty is to return a verdict that the defendant is guilty.

You will take into consideration the evidence on the part of the Commonwealth as to the speed at which this car was running at and immediately before the time of the accident; you will take into consideration the testimony on the part of the defendant as to the speed at which the car was being driven; you will take into consideration the intersection of the two streets; you were down there and viewed the premises and understand it; you will take into consideration how the street car track turns there; you will take into consideration the paved street and the curb on each side of the street car track on Peter Street and on North Gallatin Avenue; you will take into consideration the fact that it was after night and there was a headlight on the street car; you will take into consideration where the deceased was and where those were whom the testimony shows to have been with him; you will take into consideration all the circumstances in connection with the case, and then the question for you to determine under all that evidence is just the simple question, was the death of the deceased the result of the negligent operation by this defendant of his automobile at that time and at that place under the circumstances?

There has been some testimony offered here—the testimony of several witnesses—as to the previous good reputation of this defendant for care and humanity along the lines brought out in this case. It is our duty to say to you, and we do say to you, that evidence of previous good reputation in a case like this is positive and substantive evidence which you should take into consideration along with all the other evidence in the case in determining what the actual facts were in connection with this accident. Evidence of previous good reputation is competent as being some proof to you that a man who had such a previous good reputation as testified to here probably would not commit such a crime as charged in this indictment, and evidence of previous good reputation in a criminal case sometimes may raise the reasonable doubt in your minds which entitles the defendant to his acquittal, but not necessarily so. We say it may do that. It is for you to determine under all the evidence whether or not it does raise such a reasonable doubt in your minds in this case. Evidence of good reputation is not a mere makeweight thrown in to assist in the production of a result that would happen at all events, but is to

Commonwealth v. Klein.

be regarded as evidence of a substantive fact, like any other evidence, tending to prove innocence, and is to be weighed and considered by the jury in connection with all the other evidence in the case.

If you acquit the defendant, you must dispose of the costs, the charge here being that of a misdemeanor. Ordinarily, where you acquit a defendant in a misdemeanor case, you have a right to put the costs on the prosecutor or upon the defendant, or to divide them equally or unequally between the prosecutor and the defendant, or you have a right, if the evidence warrants it, to put the costs on the county. The prosecution in this case was instituted by an officer, the county detective, and where the prosecution is made by a public officer in good faith along lines which show him to be within the limits of his duty and the defendant is acquitted, you ought not to put the costs on the officer. If you acquit this defendant, it seems to us you should put the costs on either the defendant or the county, whichever seems right to you. If you convict the defendant, you say nothing about the costs; they follow your verdict.

From Luke H. Frasher, Uniontown, Pa.

NOTE.—The defendant was convicted.